IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VIRGINIA ROSS,                          )        Civil No. 06-990-JE
                                        )
                    Plaintiff,          )
                                        )
            v.                          )        FINDINGS AND
                                        )        RECOMMENDATION
MICHAEL ASTRUE,                         )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )
_____)

        Rory Linerud
        P.O. Box 1105
        Salem, OR 97308
            Attorney for Plaintiff

        Karin J. Immergut
        U.S. Attorney
        Neil J. Evans
        Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204-2902

        Joanne E. Dantonio
        Special Asst. U.S. Attorney
        Social Security Administration
        701 5th Avenue, Suite 2900 M/S 901
        Seattle, WA 98104-7075

FINDINGS AND RECOMMENDATION - 1

Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Virginia Ross brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits and supplemental security income. The Commissioner's decision should be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed her applications for disability insurance benefits and supplemental security income on November 19, 2001, alleging that she had been disabled since September 27, 2000, because of multiple surgeries on her back and neck, a history of breast cancer, Raynaud's syndrome, and stomach and bladder problems. The applications were denied initially on March 19, 2002, and were denied on reconsideration on September 12, 2002.

Following plaintiff's timely request, a hearing was held before Administrative Law Judge (ALJ) Timothy Terrill on July 2, 2003. That hearing was continued until November 19, 2003, in order to allow plaintiff the opportunity to obtain representation.

Plaintiff; plaintiff's son, Moses Ross; and Lisa Wilson, a Vocational Expert (VE); testified at the November 19, 2003 hearing.

In a decision dated February 22, 2004, ALJ Terrill found that plaintiff was not disabled within the meaning of the Social Security Act because she could perform her past relevant work as a mail clerk and office helper.  That decision became the final decision of the Commissioner on May 21, 2004, when the Appeals Council denied plaintiff's request for review.

Plaintiff appealed the Commissioner's decision to this district court.  In a decision filed on April 13, 2005, the Honorable Garr King reversed the Commissioner's decision and remanded the action for further proceedings to allow the ALJ to reconsider the opinions of two Disability Determination Service (DDS) physicians who had opined that plaintiff could not perform frequent overhead reaching.  Ross v. Barnhart, CV No. 04-1004 KI (D. Or. Apr. 13, 2005).  Judge King instructed the ALJ to either revise his hypothetical concerning plaintiff's residual functional capacity (RFC) and take additional testimony from a Vocational Expert (VE) or to provide sufficient reasons for discrediting the DDS physicians' opinions concerning plaintiff's limitations. Judge King further stated that, on remand, the ALJ should reconsider whether plaintiff had any limitations dealing with

the public, coworkers, or supervisors.  Judge King concluded that the ALJ had provided legally sufficient reasons for concluding that the testimony of plaintiff and her lay witness concerning the severity of plaintiff's limitations was not wholly credible.

Following the remand, a third hearing was held before ALJ Terrill on November 7, 2005.  Plaintiff; Judy Ross, plaintiff's daughter; and Rosalyn Kliot, a VE; testified at the hearing.

In a decision dated April 27, 2006, the ALJ found that plaintiff was not disabled within the meaning of the Act because she could perform her past relevant work as a mail clerk and general clerk.  That decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review.  In the present action, plaintiff seeks review of that decision.


## FACTUAL BACKGROUND

Plaintiff was born on August 9, 1941, and was 64 years old at the time of the most recent hearing.  She has obtained a general equivalency diploma (GED), and has past relevant work experience as a bartender, waitress, mail clerk, and general clerk.  Plaintiff has not performed substantial gainful work since September, 2000.

Plaintiff has a history of drug abuse in the distant past, and a more recent history of alcoholism, with periods of sobriety and relapses.  She has suffered from depression in varying degrees at times in her life, and has attempted suicide.

Plaintiff alleges that she has been disabled since September, 2000, because of cerebral atrophy accompanied by confusion, inability to focus, dizziness and problems with her feet which cause frequent falls; swelling and pain in her hands that prevents her from holding or grasping items; headaches; pain in the low back with right leg numbness and pain; neck pain with inability to hold up the head for more than thirty minutes; weakness of the left arm; depression and related problems with concentration; stomach pain; nausea; and inability to sit or stand for more than 30 minutes each hour and the need to lie down after sitting or standing for that length of time.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do

work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

**MEDICAL RECORD**

Plaintiff's medical record is reviewed and summarized in the ALJ's decisions denying plaintiff's applications for disability benefits, and pertinent portions of the medical record are summarized in Judge King's earlier decision remanding the action for further proceedings.  Because of the parties' familiarity with plaintiff's medical record, my summary of that record here will be brief, and will address only medical worries arising following remand, issues that are relevant to Judge King's instructions on remand, and the issues plaintiff raises now, following the ALJ's latest decision.

Plaintiff was examined by Dr. Donna Wicher, a psychologist, on November 4, 2001.  Dr. Wicher concluded that plaintiff had problems with concentration and cognitive confusion, and that these were the primary obstacles to plaintiff's return to work.  Dr. Wicher rated plaintiff's concentration, persistence, and pace as moderately impaired, and indicated that plaintiff had no impairment of social functioning.

In the decision that was remanded by Judge King, the ALJ concluded that plaintiff had moderate difficulties in maintaining concentration, persistence, and pace, and moderate difficulties in maintaining social functioning.

In a Residual Functional Capacity (RFC) assessment dated March 8, 2002, DDS reviewing psychologists Wimmers and Rethinger indicated that plaintiff's abilities to understand and remember detailed instructions, to carry out detailed instructions, to set realistic goals or make plans independently of others, and to maintain attention and concentration for extended periods were moderately limited. The RFC form signed by these reviewers included check marks in boxes both indicating that plaintiff's ability to work in coordination with or proximity to others without being distracted was "not significantly limited" and was "moderately limited." A line drawn between these two checked boxes is fairly interpreted as indicating the conclusion that plaintiff's limitation in this area was less than moderate, and was more than wholly insignificant.

Dr. Lahr and Dr. McDonald, reviewing Disability Determination Services (DDS) physicians, concluded that plaintiff could not perform overhead reaching frequently.

After this action was remanded, plaintiff submitted additional records from Dr. Chapin and from the Ginia Garcia Memorial Health Center, which had not been included in the record earlier. These records, which cover a period from July 2003 through November 2003, indicate that plaintiff continued to complain of pain, continued to experience anxiety, and continued to abuse alcohol.

At the hearing following remand, plaintiff testified that she had been diagnosed with "cerebral atrophy."  The ALJ left the record open for 30 days following the hearing in order to allow plaintiff the opportunity to provide additional records concerning this diagnosis, and asked plaintiff's counsel to inform him if he needed assistance in obtaining the records. In his decision denying plaintiff's applications for benefits, the ALJ noted that, "despite leaving the record open for over 120 days," plaintiff had not submitted any additional records concerning the "cerebral atrophy" diagnosis.

### ALJ'S DECISION

At the first step of disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of her disability.

At the second step, the ALJ found that plaintiff's back disorder, depression, anxiety, and alcoholism were severe impairments.

At the third step, the ALJ found that plaintiff's severe impairments did not meet or equal any impairment listed in 20 C.F.R. Subpart P, Appendix No. 1 (the Listings).

The ALJ next determined that plaintiff had the residual functional capacity required to perform a reduced range of medium work, which was limited to simple, repetitive tasks. He added that plaintiff could only occasionally climb,

balance, stoop, kneel, crouch, or crawl, and indicated that
plaintiff could occasionally reach with her upper extremities.
This limitation included reaching overhead.[1]  The ALJ further
found that "[a] thorough review of the records reveals that
claimant has no limitations in maintaining social functioning,
or working with or in coordination with co-workers,
supervisors, or the general public."

Based upon the VE's testimony in response to a
hypothetical including the above limitations, the ALJ found
that plaintiff's residual functional capacity would permit her
to perform her past work as a mail clerk and general clerk.
Accordingly, he concluded that plaintiff was not disabled
within the meaning of the Act.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage
in substantial gainful activity by reason of any medically
determinable physical or mental impairment which . . . has
lasted or can be expected to last for a continuous period of
not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The
initial burden of proof rests upon the claimant to establish
his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182

---

[1]The addition of this limitation satisfied Judge King's
instruction that the ALJ reconsider medical opinions concerning
plaintiff's ability to reach overhead, and revise his
hypothetical if he concluded that plaintiff could not reach
overhead frequently.

(9th Cir. 1995), <u>cert.</u> <u>denied</u>, 517 U.S. 1122 (1996).  The

Commissioner bears the burden of developing the record.

<u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's

decision if it is based on proper legal standards and the

findings are supported by substantial evidence in the record

as a whole.  42 U.S.C. § 405(g); <u>see also</u> <u>Andrews v. Shalala</u>,

53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence

means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."

<u>Andrews</u>, 53 F.3d at 1039.  The court must weigh all of

the evidence, whether it supports or detracts from the

Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771,

772 (9th Cir. 1986).  The Commissioner's decision must be

upheld, however, even if "the evidence is susceptible to more

than one rational interpretation."  <u>Andrews</u>, 53 F.3d at

1039-40.


## DISCUSSION

Plaintiff contends that the ALJ erred in failing to fully

and fairly develop the record concerning the cerebral atrophy,

confusion, inability to focus, dizziness, and loss of control

of her feet to which she testified in the most recent hearing.

She also contends that the ALJ ignored Judge King's

instructions to address plaintiff's limitations in ability to interact socially, and erred in failing to include in his RFC assessment any limitations in plaintiff's ability to work in coordination with or proximity to others without being distracted by them.

Based upon my review of the ALJ's previous and present decisions, Judge King's opinion, and relevant portions of the Administrative Record, I conclude that these contentions are not well founded, and recommend affirming the decision of the ALJ.

I. Development of the Record

As noted above, at the most recent hearing before the ALJ, plaintiff stated that she had been diagnosed with cerebral atrophy. Plaintiff provided no records of the diagnosis, and simply stated that a "Dr. Kim" had made the diagnosis. Though the ALJ left the record open to allow plaintiff to submit additional records relating to this diagnosis, as the ALJ noted in his decision, no additional records were provided during a more than 120 day period following the hearing.

Plaintiff now asserts that her attorney was "unsuccessful in locating the records" because plaintiff "was unable to recall any information other than a Dr. Davis at OHSU and Dr. Kim at St. Vincent." She asserts that, though "[t]hese facts

were made known to the ALJ by way of phone conversations with the ALJ's assistants post hearing," the ALJ and his staff made no attempt to secure the records.  Plaintiff contends that, by not obtaining these records, the ALJ failed to fully and fairly develop the record.

This argument fails.  Certainly, an ALJ has a duty to further develop the record when the evidence is ambiguous or is inadequate to allow for proper evaluation of the evidence. E.g., Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  In addition, an ALJ "has a duty to assist in developing the record."  Armstrong v. Commissioner, 160 F.3d 587, 589 (9th Cir 1998); 20 C.F.R. §§ 404.1512(d)-(f), 416.912(d)-(f).  However, the evidence in the medical record here was not ambiguous or insufficient to permit an accurate assessment of plaintiff's impairments and residual functional capacity.  Instead, plaintiff simply could not identify the location of the additional records that she faults the ALJ for not obtaining.  Though plaintiff testified that she had been diagnosed with cerebral atrophy, she neither provided medical evidence supporting that diagnosis during the substantial time the ALJ allowed her to do so, nor clearly identified where such evidence could be found.

The relevant regulations clearly state that it is the claimant's responsibility to prove that he or she is "blind or disabled."  20 C.F.R. §§ 404.1512(a), 416.912(a).  This

requires that a plaintiff provide "complete and detailed objective medical reports of her condition from licensed medical professionals." Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see 20 C.F.R. §§ 404.1512(a)-(d), 404.1513(d). Here, plaintiff failed to supply medical records related to the alleged diagnosis of cerebral atrophy, and acknowledges that she was unable to provide her attorney the information he needed to locate the records. If plaintiff's own counsel lacked the information needed to secure allegedly relevant medical records, a responsibility assigned to a claimant, plaintiff cannot fairly fault the ALJ's failure to secure those records. If plaintiff could clearly identify the location and custodian of the records she sought, but needed the ALJ's assistance in securing their release, the ALJ's failure to take further steps might constitute a failure to develop the record. However, the ALJ's failure to locate and obtain records that plaintiff and her counsel could not locate does not constitute a failure to fully develop the record.

II. Assessment of Plaintiff's Residual Functional Capacity

In his first decision, the ALJ found that plaintiff had moderate difficulties in maintaining social functioning. However, as Judge King noted in his opinion remanding this action, the ALJ failed to address any limitations plaintiff might have in dealing with the public, coworkers, or

supervisors, or to explain why no limitation was necessary. On remand, Judge King instructed the ALJ to "reconsider whether [plaintiff] has any limitations in dealing with the public, coworkers, or supervisors."

In the general discussion portion of his decision denying plaintiff's applications for benefits following remand, the ALJ found that plaintiff had "mild difficulties in maintaining social functioning . . . ." In assessing plaintiff's residual functional capacity, the ALJ found that "a thorough review of the record reveals the claimant has no limitations in maintaining social functioning, or working with or in coordination with coworkers, supervisors, or the general public."

Plaintiff asserts that the ALJ erred in altering his opinion as to the severity of plaintiff's difficulties with maintaining social functioning. She contends that his conclusion that plaintiff had no limitations in social functioning was inconsistent with the record, constituted a failure to follow Judge King's instructions, and reflects a failure to fully develop the record. Plaintiff asserts that DDS physicians Wimmers and Rethinger had assessed her as "moderately limited in her ability to work in coordination with or proximity to others without being distracted by them," and contends that the ALJ failed to provide any reasons for rejecting that opinion.

These contentions fail.  As noted in the summary of the medical record set out above, the DDS doctors did not indicate that plaintiff's ability to work in coordination with others was "moderately limited," but instead checked both the "moderately limited" and "not significantly limited" boxes, and drew a line between the two.  This indicates that these doctors concluded that plaintiff's limitations in ability to work with others without being distracted was something less than moderate.  However, other conclusions of the DDS doctors appear to be more significant in assessing plaintiff's residual functional capacity and in the assessment of plaintiff's ability to work with the public, coworkers, and supervisors required by Judge King's remand.  These include the DDS doctors' determination that plaintiff was not significantly limited in her ability to interact appropriately with the public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to maintain socially appropriate behavior.  Also of greater importance is these doctors' narrative assessment of plaintiff's functional capacity, in which they concluded that there was "[n]o indication of a need for special supervision nor of distracting behavior."  These assessments constituted substantial evidence supporting the

ALJ's conclusion that plaintiff did not have functional limitations in dealing with others.

In addition, it is important to note, as did Judge King in his earlier opinion, that a finding concerning a claimant's limitations at step three of the sequential disability analysis is different from a finding as to the claimant's residual functional capacity, which is analyzed at the fourth step. As Judge King further noted, if a claimant's impairments are not so severe as to be among those identified by the Commissioner as precluding substantial gainful activity, the limitations identified at step three "are not transferred directly into the residual functional capacity determination." Ross, CV 04-1004 KI at 12. Accordingly, the ALJ's conclusion at step three of the analysis in the first decision that plaintiff had moderate difficulties in social functioning, and conclusion that plaintiff had mild difficulties in social functioning at that step in his second decision, are not equivalent to findings as to plaintiff's residual functional capacity. There is nothing inherently inconsistent with a finding at step three that a claimant has certain difficulties and a finding that these do not constitute functional limitations when the claimant's residual functional capacity is evaluated.

In his analysis of plaintiff's residual functional capacity in his second opinion, the ALJ found that plaintiff

had no limitations in maintaining social functioning, or working with coworkers, supervisors, or the public.  The ALJ's assertion that the record established that plaintiff had no such limitations is supported by substantial evidence, including the assessment of Drs. Wimmers and Rethinger.  It is also supported by the ALJ's citation of the opinion of Donna Wicher, Ph.D., an examining psychologist who concluded that plaintiff had no difficulties in maintaining social functioning.

The ALJ's residual functional capacity determination, which included the disputed conclusion as to an absence of limitations in maintaining social functioning or working with coworkers, supervisors, or the public, was supported by substantial evidence in the record.  That record was fully developed, and the ALJ's analysis satisfied the requirements of Judge King's remand.  Accordingly, the Commissioner's decision denying plaintiff's applications for disability benefits should be affirmed.

## CONCLUSION

The Commissioner's decision denying plaintiff's applications for an award of benefits should be AFFIRMED, and a judgment should be entered dismissing this action with prejudice.

FINDINGS AND RECOMMENDATION - 19

**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due August 17, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 1st day of August, 2007.

_____
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 20